IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIN M. WHITE, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE BALDWIN SCHOOL, et al., | : | No. 12-4111 |
| Defendants. | : | |

MEMORANDUM

Schiller, J.                                                                                                           October 17, 2012

Erin White was fired from her job as a teacher and coach at The Baldwin School ("Baldwin"). She sued the school and unnamed Defendants for racial discrimination, retaliation, defamation, and invasion of privacy. Now before the Court is Baldwin's motion to dismiss the defamation and invasion of privacy claims in White's Amended Complaint. For the reasons below, the motion is granted.

I.  BACKGROUND

White began working as a physical education teacher and coach at the Baldwin School, a private, all-girls school, in 2003. (Am. Compl. ¶¶ 6-8.) White is African-American. (*Id*. ¶ 8.)

On March 4, 2011, White was informed by Deborah Surgi, Baldwin's Director of Athletics and head of the physical education department, and Joanne Brasberger, Chief Financial Officer and Director of Human Resources, that her contract was not being renewed for 2011-12 as a result of cuts in the athletic department. (*Id*. ¶¶ 37, 39.) White was told that her termination was not performance-related. (*Id*. ¶ 40.) White maintains that Baldwin retained less qualified Caucasian faculty members in the athletic department. (*Id*. ¶¶ 41-43.) White's teaching responsibilities have been assumed by

a Caucasian female with less seniority than White, and her coaching duties have been assigned to three Caucasian males. (*Id*. ¶¶ 43-46.)

White also alleges that "in the weeks before her termination, and during her final months as a teacher at Baldwin, [she] was treated differently than her Caucasian counterparts and retaliated against for complaining of racial discrimination." (*Id*. ¶ 49.) On January 5, 2011, White sought permission from the head of Baldwin to attend the National Convention for the American Alliance for Health, Physical Education, and Dance, but the request was denied. (*Id*. ¶¶ 50, 53.) Instead, Surgi asked a Caucasian female faculty member to attend. (*Id*. ¶ 54.) Surgi also "berated White for a perceived failure to follow protocol to report her absence from school . . . due to illness." (*Id*. ¶ 61.) White voiced her concerns to Kathy England, the Physical Education Department Coordinator, and following England's advice, requested a meeting with Brasberger to discuss Surgi's behavior towards her. (*Id*. ¶¶ 62-63.) On February 22, 2011, White met with Brasberger to describe Surgi's behavior. (*Id*. ¶ 64.) Though Brasberger was initially empathetic when she met privately with White, her attitude was dismissive once Surgi and England joined the meeting. (*Id*. ¶¶ 66-67.)

On March 4, 2011, White was told during a meeting with Brasberger and Surgi that she was being terminated. (*Id*. ¶ 68.) "Both before and after the March 4, 2011 termination meeting, Surgi and England embarked on a needless quest to harass and micromanage White in a way which was not only uncalled for, but which had never been imposed on any Caucasian employee in the Athletic Department." (*Id*. ¶ 69.) White was the lowest-paid teacher in the athletic department and, contrary to Baldwin's policy, she was not awarded a raise once she completed her Masters Degree in December of 2009. (*Id*. ¶¶ 79-81.)

On March 10, 2011, White and Brasberger met to discuss how White should inform her

2

students that she would not be returning. (*Id*. ¶ 83.) On March 16, 2011, White informed her upper school advisory group that her contract was not being renewed and she would not be returning to Baldwin the following year. (*Id*. ¶ 86.) She also informed her middle school soccer team later in the year that she would not be returning. (*Id*. ¶¶ 88-89.) Both groups of students "became emotional" at the news of White's departure. (*Id*. ¶¶ 87, 90.)

On May 13, 2011, White had a meeting with Sally Powell, the head of Baldwin, Brasberger, and Lois Pressman, the head of the middle school, in which Pressman accused White of "upsetting the students and sending them into a 'frenzy' when announcing that she would no longer be teaching at Baldwin." (*Id*. ¶ 91.) Brasberger falsely accused White of "not telling the students 'the truth,' i.e., that the Athletic Department was cutting back." (*Id*. ¶ 93.) As a result of White's alleged lapse of judgment, it was initially decided that she should immediately leave the campus and not finish the school year. (*Id*.) On May 16, 2011, Brasberger called White and told her that she could return to work the next day, but asked that White attend a meeting with Powell and Brasberger before the start of classes. (*Id*. ¶ 96.) During that meeting on May 17, 2011, Powell and Brasberger berated White for inappropriate comments to students regarding her departure. (*Id*. ¶ 97.) Despite the embarrassment inflicted upon her, White finished out the school year. (*Id*. ¶ 102.)

"[B]oth Brasberger and Pressman made false accusations to Powell about White during the meeting on May 13, 2011 regarding the means by which White had informed her students that she would not be returning to Baldwin." (*Id*. ¶ 106.) In May of 2011, a second grade teacher at Baldwin told White that she had heard that White was let go because "[White] upset kids and that's why they let you go;" the teacher did not tell White from whom she heard this information, though White alleges that it must have come from one or more of the participants in the May 13, 2011 meeting.

(*Id*. ¶¶ 107-08.)

The Complaint includes six counts, including Title VII and PHRA discrimination and retaliation, defamation, and false light invasion of privacy.

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id*. (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

## III.   DISCUSSION

Baldwin seeks to dismiss the defamation and the false light invasion of privacy claims brought by White.

### A.   Defamation

To succeed on a defamation claim under Pennsylvania law, a plaintiff must establish: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of the communication as intended to be applied to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a).

A statement is defamatory "if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession." *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008); *see also Green v. Mizner*, 692 A.2d 169, 172 (Pa. Super. Ct. 1997) ("When communications tend to lower a person in the estimation of the

5

community, deter third persons from associating with him, or adversely affect his fitness for the proper conduct of his lawful business or profession, they are deemed defamatory."). Whether a statement is capable of a defamatory meaning is a question of law for the court. *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 479 (E.D. Pa. 2010). To decide this question, the court must look at both the language of the communication and the context in which it was made and determine how a reasonable person would interpret the statement. *Id*.

According to White, during the May 13, 2011 meeting at which White was fired, Pressman falsely accused her of failing to tell her students the true reason she was being let go, and accused her of upsetting her students and "sending them into a 'frenzy.'" (Am. Compl. ¶¶ 91, 93.) Additionally, Brasberger claimed that due to White's "lapse of judgment," she had to leave Baldwin immediately and could not finish the school year. (*Id*. ¶ 93.) White further alleges that a second grade teacher learned about the accusations made during this May 13, 2011 meeting and that the second grade teacher told White that she had heard that "you upset kids and that's why they let you go." (Am. Compl. ¶ 107.)

Plaintiff surmises that it must have been an employee of Baldwin who published the purportedly defamatory communication that White "upset kids and that's why they let [her] go." (Am. Compl. ¶ 107.) This, however, is far too speculative a reed to hang a defamation charge upon. White makes no allegations that the teacher who learned of her termination told her the allegedly defamatory statement came from a Baldwin employee and the Court will not turn gossip into a charge of defamation.

Furthermore, the Court does not consider the statement that White upset her students capable of defamatory meaning in this context. White's Amended Complaint notes that news of her departure

6

caused her students to become "emotional at the thought of losing such a cherished teacher and coach." (Am. Compl. ¶ 90.) The alleged defamatory statements do not attribute any misconduct to White or suggest that she committed a crime or that she was not competent to perform her job. The statement at issue—regardless of who uttered it—is that White upset her students. But White agrees that the fact that her contract was not renewed had already cast a pall over her students. White has failed to state a claim for defamation.

### B. False Light

White also claims that Defendants invaded her privacy by placing her in a false light. (*Id*. ¶¶ 156-163 Defendants placed her in a false light when they "falsely and maliciously branded White as a teacher and coach who intentionally upset children and failed to tell them the truth, indicating she was not suitable for her chosen profession." (Pl.'s Resp. at 23.)

The elements of a false light invasion of privacy claim under Pennsylvania law include publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public. *Dice v. Johnson*, 711 F. Supp. 2d 340, 359-60 (M.D. Pa. 2010). In addition, a plaintiff must show that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Mzamane*, 693 F. Supp. 2d at 510. The tort requires "such a major misrepresentation of [the plaintiff's] character, history, activities or beliefs" that a reasonable person in the plaintiff's position would take serious offense at the false impression created. *Dice*, 711 F. Supp. 2d at 359-60.

This claim is a rehash of Plaintiff's defamation claim dressed in false light clothing. The statement that White upset her students is not of such a character that a reasonable person would take "serious offense." Furthermore, the Amended Complaint includes no allegations that any

representations were made to the public at large. The comments upon which White's invasion of privacy claim rests were made to three or four individuals. This falls short of the publicity requirement this tort mandates. *See Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 411 (E.D. Pa. 2001) (holding that statement made to three individuals that football coach made a racist remark was insufficient publicity to sustain false light claim); *see also Rossi v. Schlarbaum*, 600 F. Supp. 2d 650, 662 (E.D. Pa. 2009) (noting that publicity differs from publication and means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge") (citing Restatement (Second) of Torts § 652D cmt. a).

## IV.     CONCLUSION

The Court concludes that White has failed to state a claim for defamation or a claim for invasion of privacy and will therefore dismiss those claims. An Order consistent with this Memorandum will be docketed separately.